**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| DENNIS P. CASSADY, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br><br>HUMANA INC. and the HUMANA INC. MANAGER OF BENEFITS ADMINISTRATION,<br><br>  Defendants. | Case No. 3:26-CV-187-RGJ<br><br>Judge Rebecca Grady Jennings |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

RELEVANT LEGAL BACKGROUND................................................................................2

RELEVANT FACTUAL BACKGROUND...........................................................................4

ARGUMENT .......................................................................................................................10

I.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE
        12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION...................................10

        A.      The Legal Standard For A Motion to Dismiss Pursuant to Rule 12(b)(1). ............10

        B.      Plaintiff's Claims Are Moot Pursuant To The Waiver of Claims In His
                Separation Agreement...........................................................................................10

        C.      Plaintiff Lacks Article III Standing.......................................................................12

                1.      Plaintiff lacks standing to challenge the tobacco surcharge after he
                        stopped paying it at the beginning of 2024...............................................12

                2.      Plaintiff lacks standing because his payment of the tobacco
                        surcharge is not fairly traceable to the deficiencies he claims...................13

II.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE
        12(B)(6) FOR FAILING TO STATE PLAUSIBLE CLAIMS..........................................15

        A.      The Legal Standard For A Motion to Dismiss Pursuant to 12(b)(6).....................15

        B.      Plaintiff Fails To Plausibly Plead That The Plan's Tobacco Cessation
                Program Is Non-Complaint...................................................................................16

                1.      Plaintiff fails to plausibly plead that the Plan fails to provide
                        tobacco-using participants the "full reward." ...........................................16

                2.      The Plan has ERISA-compliant tobacco surcharge disclosures. ...............18

        C.      Plaintiff's Complaint Fails to Plausibly State That Defendants Breached
                ERISA's Fiduciaries Duties.................................................................................21

                1.      Plaintiff's fiduciary breach claims challenge plan design settlor
                        functions, not fiduciary conduct. ............................................................21

                2.      Counts III and IV fail for the additional reason that the Plan is
                        ERISA-compliant...................................................................................23

        D.      Plaintiff Fails To State A Prohibited Transaction Claim Under ERISA §
                1106.....................................................................................................................23

CONCLUSION....................................................................................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ......................................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................16

*Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*,
   13 F.4th 531 (6th Cir. 2021) .......................................................................................13

*Bolton v. Dep't of the Navy Bd. for Corr. of Naval Recs.*,
   914 F.3d 401 (6th Cir. 2019) ......................................................................................16

*Brunet v. City of Columbus*,
   1 F.3d 390 (6th Cir. 1993) ..........................................................................................11

*Chirinian v. Travelers Companies, Inc.*,
   24-CV-3956, 2025 WL 2147271 (D. Minn. July 29, 2025) .......................................19

*Columbia MHC E., LLC v. Stewart*,
   815 F. App'x 887 (6th Cir. 2020), *amended by* 826 F. App'x 443 (6th Cir.
   2020) ...........................................................................................................................11

*Cruse v. Wal-Mart Stores E., LP*,
   No. 23-3519, 2023 WL 9021627 (6th Cir. Sept. 20, 2023) .......................................11

*Davis v. Fed. Elec. Com'n*,
   554 U.S. 724 (2008).....................................................................................................12

*Derby City Cap., LLC v. Trinity HR Servs.*,
   3:12-CV-00850, 2013 WL 2010840 (W.D. Ky. May 13, 2013) .................................10

*Dukes v. AmerisourceBergen Corp.*,
   3:23-CV-313, 2024 WL 4282309 (W.D. Ky. Sept. 24, 2024)....................................23

*England v. Denso Int'l Am. Inc.*,
   136 F.4th 632 (6th Cir. 2025) .....................................................................................15

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).....................................................................................................16

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024).....................................................................................................15

*Gromala v. Royal & SunAlliance,*
   87 F. App'x 562 (6th Cir. 2004) .......................................................................................22

*Hoza v. Jefferson Cnty. Teachers Ass'n,*
   No. 3:09CV-764-M, 2010 WL 1533298 (W.D. Ky. Apr. 15, 2010) .....................................11

*Hughes Aircraft Co. v. Jacobson,*
   525 U.S. 432 (1999).........................................................................................................21

*Hunter v. Caliber Sys., Inc.,*
   220 F.3d 702 (6th Cir. 2000) ...........................................................................................22

*Iron Arrow Honor Soc'y v. Heckler,*
   464 U.S. 67 (1983)...........................................................................................................11

*Lockheed Corp. v. Spink,*
   517 U.S. 882 (1996).........................................................................................................22

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)....................................................................................................12, 13

*Old Blast, Inc. v. Operating Engineers Local 324 Pension Fund,*
   663 F. App'x. 454 (6th Cir. 2016) ....................................................................................13

*Reynolds v. Edison Intern.,*
   238 F.3d 430, 2000 WL 1465937 (9th Cir. Oct. 2, 2000) ....................................................21

*RMI Titanium Co. v. Westinghouse Elec. Corp.,*
   78 F.3d 1125 (6th Cir. 1996) ............................................................................................12

*Rosen v. Tenn. Comm'r of Fin. & Admin.,*
   288 F.3d 918 (6th Cir. 2002) ............................................................................................12

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998)...........................................................................................................12

*Taylor v. KeyCorp,*
   680 F.3d 609 (6th Cir. 2012) ......................................................................................10, 13

*Tebault v. United States,*
   778 F. Supp. 3d 912 (W.D. Ky. 2025)................................................................................10

*Thole v. U. S. Bank N.A,*
   590 U.S. 538 (2020).........................................................................................................12

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021)..............................................................................................13, 14, 15

iv

*Williams v. CitiMortgage, Inc.*,
    498 F. App'x 532 (6th Cir. 2012) ...............................................................................19

**Statutes**

29 U.S.C. § 1108(b) ...................................................................................................24

29 U.S.C. § 1108(b)(2)(A) .........................................................................................24

29 U.S.C. § 1108(c)(2).............................................................................................24

29 U.S.C. § 1182(b)(2) ...............................................................................................2

42 U.S.C. § 300gg-4(j)(1)(A) ......................................................................................2

42 U.S.C. § 300gg-4(j)(3)(A) ......................................................................................3

42 U.S.C. § 300gg-4(j)(3)(E).................................................................................4, 19

ERISA  § 1106 ............................................................................................................24

ERISA § 1106(b) .......................................................................................................24

**Other Authorities**

29 C.F.R. § 2590.702(f)(3)(v)......................................................................................3

29 C.F.R. § 2590.702(f)(6) ..........................................................................................4

78 Fed. Reg. 33158, 33160 (June 3, 2013) .................................................................3

Federal Rules of Civil Procedure 12(b)(1)...................................................................2

Federal Rules of Civil Procedure 12(b)(6)...................................................................2

## **INTRODUCTION**

This case should be dismissed at the outset because Plaintiff has released the claims he asserts, lacks standing, and does not state any viable cause of action. Plaintiff's Complaint challenges a lawful ERISA wellness program by misstating the contents of exhibits incorporated into the complaint and misconstruing the law that applies to Humana's tobacco cessation program. Before turning to any of those defects, however, dismissal is required because Plaintiff relinquished any right to pursue the claims he seeks to assert. In October 2025, he executed a separation agreement with Humana that expressly released all claims arising out of his employment, including claims under ERISA. That release moots any legally cognizable interest he has in this litigation, such that there is no live case or controversy. As a result, the Court lacks subject matter jurisdiction.

Plaintiff also lacks Article III standing. First, Plaintiff never paid a tobacco surcharge related to his own tobacco use. Second, while he did pay surcharges related to his wife's coverage under the Plan, he ceased doing so after December 2023, when he reported her as a non-tobacco user. At a minimum, Plaintiff cannot claim any injury arising from the Plan's operation in 2024 or later because he paid no tobacco surcharges during that period.

Prior to 2024, Plaintiff's Complaint only asserts a purported informational injury but alleges no facts showing that any claimed deficiency in Plan disclosures caused him harm. He does not allege that he would have acted differently with additional information, that he attempted to obtain relief but was unable to do so, or that any confusion prevented him from avoiding the surcharge. On the contrary, Plaintiff admits he was aware of the tobacco cessation program and simply claims he was not affirmatively told by Defendants or anyone acting on their behalf of the program's parameters. His attempt to manufacture standing from alleged disclosure defects untethered to any real-world consequence fails as a matter of law.

Even putting these dispositive issues aside, the Complaint fails to state a legally viable claim. Plaintiff's core theory—that ERISA requires retroactive reimbursement of tobacco surcharges when a participant completes a cessation program during the Plan year—finds no support in the statutory text, implementing regulations, or governing guidance. Courts have rejected claims nearly identical to those presented here. Indeed, ERISA permits exactly the type of prospective incentive structure the Plan employed prior to 2026. What's more, starting with the 2026 Plan year, the Plan provides the exact retroactive reimbursement Plaintiff now claims is required.

Plaintiff's disclosure claims fare no better. These claims rely on duties ERISA does not impose, including demands for disclosures beyond what the law requires. Finally, Plaintiff's fiduciary duty and prohibited transaction claims simply repackage his challenges to plan design—matters that are, as a matter of settled law, non-fiduciary, settlor functions—which cannot be the basis for claims that lie only against fiduciaries.

In short, Plaintiff has released his claims, lacks standing, and fails to plead any viable causes of action. The Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**RELEVANT LEGAL BACKGROUND**

***Relevant Statutory and Regulatory History.***

In 1996, HIPAA added Section 702 of ERISA to allow plans to establish "premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2). These are commonly referred to as "wellness programs." 42 U.S.C. § 300gg-4(j)(1)(A).

The amended statute requires wellness programs to: (1) be "reasonably designed to promote health or prevent disease," (2) "give individuals eligible for the program the opportunity

2

to qualify for the reward under the program at least once a year", (3) make the "full reward . . . available to all similarly situated individuals," and (4) "disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard)." *Id.* at 300gg-4(j)(3)(B)–(E). With respect to the "full reward" requirements, the statute explains that "[t]he reward is not available to all similarly situated individuals for a period unless the wellness program allows for a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard [or] for whom, for that period, it is medically inadvisable to satisfy the otherwise applicable standard." *Id.* at § 300gg-4(j)(3)(D)(i). It further defines "reward" to include "a discount or rebate of a premium or contribution, a waiver of all or part of a cost sharing mechanism (such as deductibles, copayment or coinsurance), the absence of a surcharge, or the value of a benefit that would otherwise not be provided under the plan." *Id.* at § 300gg-4(j)(3)(A). As to the notice requirements, the statute clarifies that, "[i]f plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required." *Id.* at 300gg-4(j)(3)(E).

In 2013, the DOL issued revised wellness program regulations. *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33160 (June 3, 2013). There, the DOL added a disclosure requirement that plan materials include "a statement that recommendations of an individual's personal physician will be accommodated" in outcome-based wellness programs. 29 C.F.R. § 2590.702(f)(3)(v). The statute, in contrast, only requires that plans disclose "in all plan materials *describing the terms of the wellness program* the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise

3

applicable standard)." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). The 2013 Regulations

also included sample language which "*can* be used to satisfy the notice requirement" for

wellness programs. 29 C.F.R. § 2590.702(f)(6) (emphasis added).

Finally, in 2014, the DOL released a set of Frequently Asked Questions ("FAQ")[1] to

clarify certain positions regarding tobacco wellness programs. Relevant here, Question 8 states:

> **Q8: A group health plan charges participants a tobacco premium surcharge but also provides an opportunity to avoid the surcharge if, at the time of enrollment or annual reenrollment, the participant agrees to participate in (and subsequently completes within the plan year) a tobacco cessation education program. A participant who is a tobacco user initially declines the opportunity to participate in the tobacco cessation program, but joins in the middle of the plan year. Is the plan required to provide the opportunity to avoid the surcharge or provide another reward to the individual for that plan year?**
>
> No. If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoid the tobacco premium surcharge) under the program, the plan is not required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year. Nothing, however, prevents a plan or issuer from allowing rewards (including pro-rata rewards) for mid-year enrollment in a wellness program for the plan year.

### RELEVANT FACTUAL BACKGROUND

#### *The Humana Welfare Benefit Plan.*

The Humana Welfare Benefit Plan (the "Plan") is sponsored and administered by

Defendant Humana Inc. ("Humana"). (*See* **Exhibit A**[2], 2024.25 Summary Plan Description

("SPD") at 110.) The Plan year aligns with the calendar year, running January 1 through

---

[1] *FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation*, Dep't of Lab. (Jan. 9, 2014), at 6, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-18.pdf ("DOL FAQs").

[2] The Exhibits cited in support of Defendants' Memorandum of Law are attached to the Declaration of Traci Zimmerman, attached hereto as **Exhibit 1**.

4

December 31. (Ex. A, 2024.25 SPD at 111.) The Plan is self-insured and therefore funded exclusively by contributions from the general assets of Humana and participant premiums. (Ex. A, 2024.25 SPD at 111.) Employees initially elect to participate in the Plan upon hire or when they become eligible under the terms of the Plan. (Ex. A, 2024.25 SPD at 86; **Exhibit B,** 2025 Traditional Benefit Guide ("TBG") at 4.) Thereafter, employees may elect to participate in the Plan on a yearly basis during the open enrollment period. (Ex. A, 2024.25 SPD at 86.) Employees can also enroll following qualified life events. (Ex. A, 2024.25 SPD at 89; Ex. B, 2025 TBG at 4.) When enrolling, participants are required to identify whether they or a dependent spouse are tobacco users. (**Exhibit C,** 2026 Tobacco Surcharge FAQ at 1.) Participants or spouses who use tobacco products are charged an additional premium cost of $20/weekly ($40 biweekly). (Ex. B, 2025 TBG at 24.)

### *The Plan's Tobacco Cessation Program Prior to the 2026 Plan Year.*

Prior to the 2026 Plan year, the Plan allowed tobacco users to avoid the tobacco surcharge by completing any tobacco cessation program of their choice, including tobacco cessation programs recommended by a physician. (*See* Ex. 1 at ¶ 3; Ex. B, 2025 TBG at 24.) As demonstrated in the 2025 TBG, participants were advised of both the existence of the surcharge and how to avoid it. (Ex. B, 2025 TBG at 24.) The TBG also directed participants to a hyperlinked internal webpage which contained more detailed information about the program. (Ex. B, 2025 TBG at 24; Ex. 1 at ¶¶ 4–5.)

During this period, if an enrolled tobacco user completed a tobacco cessation program, they could avoid further surcharge payments by notifying the Plan of their completion of the program. (Ex. 1 at ¶ 5.)  No paperwork or validation was required. (Ex. 1 at ¶ 5.) Once the participant advised the Plan that they or their spouse had completed a tobacco cessation program,

the tobacco surcharge was removed from the participant's premium for the remainder of the Plan year. (Ex. 1 at ¶ 5.) Prior to 2026, the Plan did not provide retroactive reimbursement of tobacco surcharge premium amounts paid before the participant notified the Plan of the completion of the cessation course. (Ex. 1 at ¶ 6.)

### *The Plan's Tobacco Cessation Program Beginning with the 2026 Plan Year.*

Beginning January 1, 2026, the Plan switched from allowing tobacco users to avoid surcharges by completing a cessation program of their choice to instead requiring completion of a program through the Personify Health Well-Being Rewards Program. (*See* **Exhibit D,** 2026 Traditional Benefits Guide at 11.) The 2026 TBG again directly informs participants of the tobacco premium differential and that they may avoid the surcharge by completing a Personify Health Tobacco Cessation program. (Ex. D, 2026 TBG at 24.) It also again directs participants to the "Well-Being Rewards" page and the "Well-being and Benefits Center," which describes the updated program in detail and discloses its impact on participant premiums. (Ex D, 2026 TBG at 11.) For example, through the link, participants are directed to the 2026 Tobacco Surcharge FAQs (Ex. C), a document titled "Additional Costs and Surcharges on the Company Medical Plan" (attached as **Exhibit E**), and a document titled "Medical Plan Additional Costs and Surcharges" (attached as **Exhibit F**).

These materials specifically inform participants that, to complete the tobacco cessation program, they must: (1) complete two "Tobacco Cessation Journeys," each ranging from 10 to 18 days in duration, and (2) complete at least one interaction with a Health Coach. (Ex. C, 2026 Tobacco Surcharge FAQ at 1; Ex E, Additional Costs and Surcharges at 3; Ex. F, Medical Plan Additional Costs and Surcharges at 3.) Participants must satisfy these requirements by November 30 of the applicable Plan year. (Ex. C, 2026 Tobacco Surcharge FAQ at 1; Ex. D, 2026 TBG at

23.) Upon completion, as before, the tobacco surcharge is removed prospectively, and participants also now receive retroactive reimbursement of tobacco surcharge amounts previously paid during the Plan year. (Ex. C, 2026 Tobacco Surcharge FAQ at 1; Ex. E, Additional Costs and Surcharges at 3; Ex. F, Medical Plan Additional Costs and Surcharges at 1.)

The Well-being and Benefits Center further discloses that the Plan will consider recommendations from and work with a participant's physician "to find a wellness program with the same reward that is right for you in light of your health status." (Ex. C, 2026 Tobacco Surcharge FAQ at 2.)

### *Plaintiff's Plan Participation and Termination of Employment.*

Plaintiff, Dennis P. Cassady ("Plaintiff") is a former Humana employee. (ECF No. 1 at ¶ 13.) He alleges that, while employed by Humana, he enrolled in and maintained health insurance coverage under the Plan for himself and his spouse. (ECF No. 1 at ¶¶ 13, 15–16.) Plaintiff contends he was required to pay a tobacco surcharge as part of his enrollment and continued participation in the Plan. (ECF No. 1 at ¶¶ 13, 15.) He alleges the tobacco surcharge assessed to him was $40 per paycheck, approximately $80 per month, and was deducted from his pay on a pre-tax basis through payroll deductions. (ECF No. 1 at ¶¶ 7, 13, 15, 35.) In reality, Plaintiff never paid a tobacco surcharge related to his own Plan participation and has not paid any tobacco surcharge since 2023. (Ex. 1 at ¶¶ 8–10.) Beginning in June 2018, Plaintiff paid a tobacco surcharge related to his wife's coverage under the Plan, when he reported her as a tobacco user. (Ex. 1 at ¶ 9.) Plaintiff changed his wife's status to a non-tobacco user on December 22, 2023, and has not paid any tobacco surcharge since his final paycheck of 2023, issued that same day, December 22, 2023.  (Ex. 1 at ¶¶ 9–10.) Accordingly, Plaintiff has not paid a tobacco surcharge in the 2024, 2025, or 2026 Plan years.  (Ex. 1 at ¶ 10.)

| 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|---|---|
| Spouse | Spouse | Spouse | Spouse | Spouse | Spouse | Tobacco Free | Tobacco Free | Tobacco Free |

Plaintiff's employment with Humana ended on or about October 24, 2025. (*See* **Exhibit G,** Separation Agreement.) At the conclusion of his employment, Plaintiff entered into a Voluntary Release and Separation Agreement wherein, in exchange for 42 weeks of continued payment of his base salary,[3] he agreed to the following release of claims:

> **Release:** The foregoing is in consideration of your agreement that the Consideration provided above is accepted in return for ***full and final release and settlement of any and all legal and equitable claims of any type relating to your employment*** or separation from employment which you have or may have against Humana or any of its officers, agents, or employees, as of the date you sign this Agreement. You represent that you have not filed or otherwise initiated any other complaints, claims, or charges with any local, state or federal court, agency or board, based on events occurring prior to and including the date you execute this Agreement. You agree to bring no lawsuits, claims, or demands of any kind, whether in tort, contract or common law or pursuant to any federal, state or local ordinance or statute, relating to your employment or to your separation from employment; except, you may file suit to enforce this Agreement or to challenge its validity under the Age Discrimination and Employment Act. ***This release includes, but is not limited to, any right, claim, or claims, whether known or unknown, under*** the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, ***the Employee Retirement Income Security Act***, the Family and Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act and any and all claims under any other federal, state, or local statutory, administrative, constitutional, common law or other legal or equitable theory, including but not limited to, claims for wrongful discharge or breach of contract. Further, you agree to waive any right to file or pursue a complaint under Humana's Resolving Issues Policy.

(Ex. G, Separation Agreement at ¶ B (emphasis added).) Per the Agreement, Plaintiff also elected to continue his medical coverage under the Plan for the 42 weeks he was receiving

---

[3] As of this filing, Plaintiff is still receiving his base salary under the terms of the agreement and is a current Plan participant. The 42-week period will expire on or about August 14, 2026.

payment. (Ex. G, Separation Agreement at ¶ A(2).) Plaintiff has also not paid any tobacco surcharges for that continued coverage period. (Ex. 1 at ¶ 10.)

### *Plaintiff's Allegations.*

In Counts I and II, Plaintiff alleges the Plan's tobacco surcharge is unlawful because the Plan purportedly fails to comply with ERISA's requirements governing tobacco cessation wellness programs. (ECF No. 1 at ¶¶ 61–70.) Specifically, Plaintiff contends that although the Plan offers a tobacco cessation program as an alternative, it does not ensure that participants who complete that alternative receive the "full reward," because it does not provide retroactive reimbursement of surcharges assessed prior to completing the program. (ECF No. 1 at ¶¶ 6–7, 36–40, 62–63.)

Plaintiff further alleges Defendants failed to provide the disclosures required for outcome-based wellness programs. (ECF No. 1 at ¶¶ 65–69.) Specifically, he contends that Plan materials do not adequately disclose the availability of a reasonable alternative standard, how to access it, or that a participant's physician recommendations will be accommodated. (ECF No. 1 at ¶¶ 8–10, 34-40, 67–68.) He also alleges the materials do not clearly describe the surcharge, state whether completion yields the full reward or retroactive reimbursement, or inform him that completion of the program could result in repayment of prior surcharge amounts. (ECF No. 1 at ¶ 67–68.)

Based on these alleged deficiencies, Plaintiff contends Defendants cannot invoke the wellness program safe harbor and that the surcharge operates as an unlawful penalty. (ECF No. 1 at ¶¶ 7–10, 27–28, 66–69.)

In Counts III and IV, Plaintiff alleges Humana and the Humana Inc. Manager of Benefits Administration (collectively "Defendants") breached their fiduciary duties by maintaining a

9

noncompliant wellness program. (ECF No. 1 at ¶¶ 73–95.) Plaintiff also alleges Defendants failed to adequately monitor Plan administration by allowing the non-compliant provisions of the Plan to proceed. (ECF No. 1 at ¶¶ 74–77, 87–90.) Finally, Plaintiff alleges Defendants engaged in a prohibited transaction by using the tobacco surcharge amounts to offset Humana's required employer contributions, thereby shifting costs to participants, reducing Plan funding, and allowing Humana to retain the resulting savings. (ECF No. 1 at ¶¶ 73, 79-80, 87, 91-92.)

## <u>ARGUMENT</u>

**I.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.**

**A.      The Legal Standard For A Motion to Dismiss Pursuant to Rule 12(b)(1).**

A Rule 12(b)(1) challenge for lack of subject matter jurisdiction can take the form of a facial or a factual attack on the plaintiff's allegations. *Tebault v. United States*, 778 F. Supp. 3d 912, 918 (W.D. Ky. 2025). "Facial attacks challenge the sufficiency of the pleading, whereas factual attacks challenge the facts in the pleading." *Id.* Courts considering a 12(b)(1) motion to dismiss "may look beyond the jurisdictional allegations in the complaint and consider submitted evidence." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). It is Plaintiff's burden to prove subject matter jurisdiction. *Derby City Cap., LLC v. Trinity HR Servs.*, 3:12-CV-00850, 2013 WL 2010840, at *1 (W.D. Ky. May 13, 2013).

As discussed below, Plaintiff cannot establish subject matter jurisdiction because: (1) he has waived the ERISA claims he asserts; and (2) he has not suffered an injury that is causally connected to any conduct by Defendants.

**B.      Plaintiff's Claims Are Moot Pursuant To The Waiver of Claims In His Separation Agreement.**

Dismissal is required under Rule 12(b)(1) because Plaintiff executed a separation agreement in October 2025 containing a full and final release of the precise claims asserted in

10

this action. A release of claims pursuant to settlement strips a plaintiff of a legally cognizable interest in the outcome of the litigation and therefore moots the action. *See Cruse v. Wal-Mart Stores E., LP*, No. 23-3519, 2023 WL 9021627, at \*2 (6th Cir. Sept. 20, 2023) ("Because [plaintiff] released his claims against [defendant], he no longer has a legally cognizable interest in the outcome of this litigation and the appeal is moot."); *Columbia MHC E., LLC v. Stewart*, 815 F. App'x 887, 890 (6th Cir. 2020), *amended by* 826 F. App'x 443 (6th Cir. 2020) ("[S]ettlement agreements qualify as the types of interim relief or events that may 'deprive the court of the ability to give meaningful relief' and render a case moot." (citation omitted)); *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) ("[S]ettlement of a plaintiff's claims moots an action." (citation omitted)).

Federal courts lack subject-matter jurisdiction to review moot claims and must dismiss them. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases . . . ."); *Hoza v. Jefferson Cnty. Teachers Ass'n*, No. 3:09CV-764-M, 2010 WL 1533298, at \*7 (W.D. Ky. Apr. 15, 2010) ("Having concluded that the plaintiffs' federal claims are moot, they must be dismissed for a lack of subject matter jurisdiction.").

Here, Plaintiff has expressly released all ERISA-related claims, including those stated in his Complaint. The agreement provides that Plaintiff released:

> any and all legal and equitable claims of any type relating to [Plaintiff's] employment or separation from employment which you have or may have against Humana . . . including claims, whether known or unknown, under . . . the Employee Retirement Income Security Act.

(Ex. G, Separation Agreement at ¶ B.) As a result of Plaintiff's voluntary release of claims, he cannot seek relief from this Court. His claims are moot, the Court lacks subject matter jurisdiction, and dismissal under Rule 12(b)(1) is required.

11

### C.    Plaintiff Lacks Article III Standing.

Dismissal is also required because Plaintiff lacks standing to pursue the claims he asserts. Standing is a threshold jurisdictional question that must be addressed before and independent of the merits of a party's claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The Supreme Court has made clear, "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020). In ERISA cases, courts must apply the "ordinary Article III standing analysis" in evaluating their own jurisdiction. *Id.* Under this analysis, a plaintiff must allege facts showing: (1) a concrete and particularized injury in fact; (2) that is traceable to the defendant's conduct; and (3) that can be redressed by judicial relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Elec. Com'n*, 554 U.S. 724, 734 (2008) (cleaned up). When a plaintiff cannot establish the facts necessary to demonstrate Article III standing, the court lacks subject matter jurisdiction, and the case must be dismissed. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (noting that the plaintiff bears the burden of establishing the facts giving rise to jurisdiction when confronted with a 12(b)(1) motion to dismiss).

### 1.    Plaintiff lacks standing to challenge the tobacco surcharge after he stopped paying it at the beginning of 2024.

Plaintiffs who lack a personal stake in the litigation because they were not personally affected by the alleged harms do not have Article III standing. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 931 (6th Cir. 2002); *see also Old Blast, Inc. v. Operating Engineers Local 324 Pension Fund*, 663 F. App'x. 454, 457 (6th Cir. 2016) (finding plaintiff lacked Article III standing where she did not personally suffer the cost alleged to be the injury); *Taylor*, 680 F.3d at 615 (finding plaintiff lacked standing where she did not incur a financial loss as a result of the

12

allegations of wrongdoing); *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 545 (6th Cir. 2021) (finding that standing was not established where the plaintiffs attempted to rely upon a conclusory, yet to occur injury).

Because his claim is premised on the suggestion that he was "harmed" by paying an allegedly illegal tobacco surcharge, Plaintiff lacks standing to challenge the tobacco surcharge in periods of time where he was not paying it. Plaintiff identified his wife, for whom he was paying the tobacco surcharge, as a non-tobacco user on December 22, 2023. (Ex. 1 at ¶ 9.)  Therefore, he has not paid any tobacco surcharge after December 2023. (Ex. 1 at ¶ 10.) Even under his theory of the case, he has not suffered any alleged harm after that point and so has no injury traceable to the challenged conduct after that date. Any claims directed at the tobacco surcharge in 2024 or later fail for lack of injury in fact.

### 2. Plaintiff lacks standing because his payment of the tobacco surcharge is not fairly traceable to the deficiencies he claims.

It is well settled that "bare procedural violation[s], divorced from any concrete harm" do not satisfy Article III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021). Article III standing requires a causal connection between the alleged injury and the challenged conduct; the injury must be "fairly traceable" to the defendant's actions. *Lujan*, 504 U.S. at 560 (cleaned up). In addition, the alleged injury must affect the plaintiff "in a personal and individual way." *Id.* at 560 n.1.

For example, in *TransUnion*, the plaintiffs alleged that a credit reporting agency violated the Fair Credit Reporting Act by sending consumers copies of their credit files and summaries of their rights in two mailings rather than one. 594 U.S. at 417, 420–21, 440. Although the plaintiffs alleged a statutory violation, they did not "demonstrate that they suffered any harm *at all* from the formatting violations." *Id.* at 440 (emphasis in original). The Supreme Court therefore made

13

clear that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* at 442 (quotation marks omitted).

Under these standards, Plaintiff also lacks standing for the period before 2024. Plaintiff's theory is one of informational injury—that Plan materials did not adequately explain the availability or mechanics of premium relief through the tobacco cessation program. But a bare deficiency in disclosures is insufficient to establish standing absent a plausible allegation that the missing information caused concrete harm. In *Plesha v. Ascension Health Alliance*, the court dismissed a tobacco surcharge notice claim because the plaintiff did not "claim that she personally needed to use or would have used an accommodating physician's recommendation instead of the wellness program," and therefore her allegations of deficient plan disclosures were not traceable to the alleged injury of paying the tobacco surcharge. No. 4:24-CV-01459, 2026 WL 279321, at *7 (E.D. Mo. Feb. 3, 2026).

The same reasoning applies here. Like the plaintiff in *Plesha*, Plaintiff "has not demonstrated how [his] behavior would have changed with a compliant notice." *Id.* The court there further explained:

> The cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself. Plaintiff has not demonstrated how her behavior would have changed with a compliant notice. Put another way, Plaintiff would be in the exact same place with or without the purported defects in the notice.

*Id.*

That reasoning is also dispositive here. Although Plaintiff purports to have suffered a financial injury in the form of surcharge payments, those payments are not fairly traceable to the alleged disclosure deficiencies. Plaintiff admits that he was aware the Plan offered a tobacco cessation program (ECF No. 1 at ¶ 36) and does not allege that his or his wife's behavior

14

(tobacco use) would have changed but for the purported lack of information regarding the tobacco cessation program and available premium relief. Indeed, because Plaintiff himself was already avoiding a tobacco surcharge by identifying as a non-tobacco user, he cannot claim *any* personal informational injury. Instead, he is attempting to connect his own payment of tobacco surcharges to an alleged failure to provide disclosures about how his wife could avoid them. Because the alleged misconduct did not cause the asserted monetary injury, it cannot confer Article III standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) ("Article III standing is a 'bedrock constitutional requirement that this Court has applied to all manner of important disputes.'" (quoting *United States v. Texas*, 599 U.S. 670 (2023)).

**II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILING TO STATE PLAUSIBLE CLAIMS.**

**A.    The Legal Standard For A Motion to Dismiss Pursuant to 12(b)(6).**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *England v. Denso Int'l Am. Inc.*, 136 F.4th 632, 636 (6th Cir. 2025) (citation omitted). Indeed, to satisfy this threshold and establish that the claims have sufficient merit, a plaintiff must "'nudge[] their claims across the line from conceivable to plausible'" or "'their complaint must be dismissed.'" *Id.* (alteration in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Moreover, a court need not accept a plaintiff's legal conclusions as true and must consider documents incorporated into the complaint by reference. *See Ashcroft*, 556 U.S. at 678; *Bolton v. Dep't of the Navy Bd. for Corr. of Naval Recs.*, 914 F.3d 401, 406 (6th Cir. 2019).

15

Acknowledging the significant cost to defend ERISA class actions, the Supreme Court emphasized that motions to dismiss are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). For that reason, courts must conduct a "careful, context-sensitive scrutiny" of the allegations to "divide the plausible sheep from the meritless goats." *Id.*

### B.   Plaintiff Fails To Plausibly Plead That The Plan's Tobacco Cessation Program Is Non-Complaint.

#### 1.   Plaintiff fails to plausibly plead that the Plan fails to provide tobacco-using participants the "full reward."

Plaintiff's claim that the Plan denies tobacco-using participants the "full reward" fails to plausibly state a violation of ERISA and should be dismissed under Rule 12(b)(6). Plaintiff contends the Plan violates ERISA by failing to retroactively reimburse tobacco-use surcharges incurred before a participant completes the tobacco cessation program. But ERISA imposes no such retroactivity requirement.

Courts addressing this issue have rejected the precise theory Plaintiff advances. Indeed, in *Greene v. Progressive Corp.*, the U.S. District Court for the Northern District of Ohio specifically rejected the assertion Plaintiff makes in this matter (*see* ECF No. 1 at ¶ 32) that the preamble to the DOL's applicable ERISA regulations requires retroactive reimbursement. No. 1:24-cv-01890, 2026 WL 785004, at *7–11 (N.D. Ohio Mar. 20, 2026). The court there found the preamble was not controlling and the plain language of the statute "does not say anything about a retroactive reward and there is no reason to imbue the statute with such a requirement." *Id.* at *10. Similarly, in *Plesha*, the Eastern District of Missouri dismissed claims that, like the claims here, challenged a plan that provided only prospective relief from a tobacco surcharge upon completion of a cessation program. 2026 WL 279321, at *4–5. In doing so, the court expressly rejected the notion that ERISA mandates retroactive reimbursement. *Id.* at *5 ("[ERISA] does

16

not impose a retroactive reimbursement requirement for tobacco cessation surcharges.").
Likewise, in *Buescher v. North American Lighting, Inc.*, the court held that a tobacco cessation
program did not violate ERISA by declining to provide retroactive reimbursement of surcharge
premiums. 791 F. Supp. 3d 873, 906–07 (C.D. Ill. 2025).[4]

Prior to 2026, the Plan provided prospective relief (*i.e.*, removal of future tobacco
surcharge payments, without reimbursement of surcharge payments already made) to all tobacco
users who notified the Plan that they had completed a tobacco cessation program.[5] Participants
could avoid the tobacco surcharge either by attesting to non-tobacco use during open enrollment
or by completing the tobacco cessation program during the plan year. The reasonable alternative
standard thus provided access to the same reward—prospective elimination of the surcharge—on
equal terms. Plaintiff's claim rests entirely on reading into ERISA a retroactive reimbursement
requirement that Congress did not enact.

Courts confronting materially similar plan designs have held that providing the "full
reward" does not require providing identical retroactive reimbursement to participants who meet
the standard to avoid tobacco surcharge payments at different times. In *Williams v. Bally's
Management Group, LLC*, for example, the court found that participants who obtained
prospective premium relief either by certifying non-tobacco use at enrollment or by completing a
cessation program during the year received the same "full reward." 813 F. Supp. 3d 263, 279
(D.R.I. Nov. 4, 2025). Similarly, in *Parker v. TTEC Holdings, Inc.*, the court emphasized that,
where no participants are entitled to retroactive relief, the plan does not treat similarly situated

---

[4] Defendants acknowledge, and Plaintiff will surely cite, that other courts have found claims plausible where they alleged the "full reward" requirement requires retroactivity. Defendants submit, however, that the cases cited herein align more closely with the statutory text and requirements.

[5] Beginning with the 2026 Plan year, the Plan now provides retroactive reimbursement of tobacco surcharge premiums for participants who complete the cessation requirement prior to November 30. Thus, while the statute does not require it, the Plan now provides for the retroactive reimbursement Plaintiff claims is required of compliant wellness programs.

individuals differently or deprive them of the full reward. No. 1:24-CV-03148, 2026 WL 917789, at *6 (D. Colo. Mar. 30, 2026).

ERISA's "full reward" requirement obligates outcome-based wellness programs to make the reward available to participants who satisfy a reasonable alternative standard. It does not require plans to refund premiums paid before a participant satisfies that standard. Nothing in ERISA's text or implementing regulations imposes a retroactive reimbursement obligation, and Plaintiff identifies no statutory language that could plausibly support one. There is nothing unlawful about the Plan having provided only prospective relief prior to 2026. Plaintiff's allegations to the contrary fail to state a viable claim.

### 2.    The Plan has ERISA-compliant tobacco surcharge disclosures.

Plaintiff also fails to plausibly allege that the Plan did not provide the disclosures required for outcome-based wellness programs under ERISA, and Count II should be dismissed on that ground. Plaintiff's disclosure claims rest on the assertion that participants who did not initially qualify as non-tobacco users were not informed that completing a reasonable alternative standard during the plan year would entitle them to the same premium relief as non-tobacco users. (ECF No. 1 at ¶¶ 36–40.) According to Plaintiff, the Plan's SPD does not contain the required disclosures and Defendants' materials allegedly fail to make clear that the "full reward" is available upon satisfaction of the alternative standard. Plaintiff further asserts—without explaining how his own efforts to obtain the surcharge were stymied—that Plan disclosures were deficient because they did not include contact information or a statement that a participant's physician's recommendations would be accommodated. (ECF No. 1 at ¶ 38.)

As a threshold matter, Plaintiff's theory depends on a mistaken premise regarding ERISA's disclosure requirements. Neither the statute nor its implementing regulations require that a Summary Plan Description—or any single document—comprehensively describe every

18

aspect of a wellness program, including the mechanics of premium adjustments or the precise timing of relief. Instead, the regulations only require that plans disclose, "in all plan materials describing the terms of the wellness program[,] the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard)." 42 U.S.C. § 300gg-4(j)(3)(E).

Plaintiff's attempt to transform this limited notice obligation into a mandate that Defendants spell out every operational detail of the tobacco cessation program in every Plan document—particularly the SPD—finds no support in the statute or regulations. Courts addressing similar claims have rejected efforts to expand ERISA's disclosure requirements beyond their text. *See Plesha,* 2026 WL 279321, at *8 (dismissing notice claims where the asserted violations were based on requirements not found in ERISA); *Williams*, 813 F. Supp. 3d at 280 (holding benefits guides that did not "describe the terms" of the tobacco cessation program could not be used to state a viable claim for breach of statutory notice obligations); *Chirinian v. Travelers Companies, Inc.*, 24-CV-3956, 2025 WL 2147271, at *10 (D. Minn. July 29, 2025) (acknowledging that physician accommodation language is not required to be included in plan documents by the statute).

In any event, Plaintiff's allegations are contradicted by the disclosures he references. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (considering a 12(b)(6) motion to dismiss and noting that "'[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations'" (citation omitted)). As explained above, the 2025 and 2026 TBGs disclose the tobacco surcharge and how to avoid it and direct plan participants to a dedicated webpage containing the wellness program details. (Ex. B, 2025 TBG at 24; Ex. D, 2026 TBG at 24.) Prior to 2026, those materials informed participants

19

that they could receive prospective premium relief by completing any tobacco cessation program (directed by their physician or otherwise) and by simply informing the Plan when that program was completed. (Ex. 1 at ¶¶ 4–6.) The 2026 materials further describe the premium differential, identify the reasonable alternative standard, explain how it may be completed, and outline how premiums are adjusted upon completion. (*See generally* Exs. C, D, E, F.) The 2026 Tobacco Surcharge FAQs specifically state that physician recommendations will be accommodated. (Ex. C, 2026 Tobacco Surcharge FAQ at 2.)

Plaintiff cannot rely on vague allegations made "upon information and belief" to survive dismissal where the structure and content of the Plan's current communications demonstrate compliance with ERISA's requirements. *See Greene*, 2026 WL 785004, at *11 (rejecting plaintiff's allegations that "upon information and belief" other plan disclosures were inadequate as speculative because the plaintiff could have, but did not, review other plan disclosures prior to filing). Nor can he overcome dismissal by claiming that the details of the tobacco cessation program are not disclosed in every Plan document (including the SPD). In *Noel v. Pepsico, Inc.*, the court dismissed a similar notice claim where the plaintiff contended solely that the SPD disclosure was deficient but did not identify any other disclosures, let alone non-compliant ones. 24-CV-7516, 2026 WL 558118, at *13 (S.D.N.Y. Feb. 27, 2026). Ultimately, the court reasoned that Plaintiff could have examined employee-facing documents such as "enrollment guides, benefits summaries, and online portals," but failed to do so and could not sustain her notice claim by simply alleging non-compliant disclosures based "upon information and belief." *Id.* The same is true here, Plaintiff is a current Plan participant who could have reviewed the current disclosures. He did not and cannot sustain this claim by vague assertions of non-compliance.

20

Ultimately, Count II reduces to a disagreement about the level of detail, format, or location of the Plan's disclosures. But ERISA does not require disclosures to be presented in any particular document or in the exhaustive manner Plaintiff demands. Because the Plan satisfies the statute's limited notice requirements—and because Plaintiff's claim rests on an unsupported expansion of those requirements, Count II fails to state a plausible claim for relief and should be dismissed under Rule 12(b)(6).

### C. Plaintiff's Complaint Fails To Plausibly State That Defendants Breached ERISA's Fiduciaries Duties.

#### 1. Plaintiff's fiduciary breach claims challenge plan design settlor functions, not fiduciary conduct.

Plaintiff's fiduciary breach claims fail because he fundamentally challenges the structure of the Plan and not any fiduciary decisions impacting participants. The establishment of terms on an employee benefit plan is a settlor function that "do[es] not trigger ERISA's fiduciary duties." *Reynolds v. Edison Intern.*, 238 F.3d 430, 2000 WL 1465937, at *1 (9th Cir. Oct. 2, 2000) (internal citations omitted); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the plan sponsor], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."). "This rule is rooted in the text of ERISA's definition of fiduciary[,]" which makes a person a fiduciary only when performing certain defined management or administration functions that do not include plan design. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citing 29 U.S.C. § 1002(21)(A)). When plan sponsors perform a plan design function, such as determining premiums, "they do not act as fiduciaries, but are analogous to the settlors of a trust[.]" *Id.* (citations omitted); *see Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000)

(explaining that plan settlor functions include "establishing, funding, amending and terminating the trust"); *Gromala v. Royal & SunAlliance*, 87 F. App'x 562, 564 (6th Cir. 2004) (same).

Indeed, courts analyzing materially similar allegations—that the administration of a tobacco surcharge breached ERISA's fiduciary duties—have concluded that such administration constitutes a settlor function rather than a fiduciary one. *See Plesha*, 2026 WL 279321, at *9 (holding that the plan sponsor acted as settlor in adopting and implementing the tobacco cessation program consistent with plan terms); *Noel*, 2026 WL 558118, at *15 (explaining that plaintiff's fiduciary breach allegations amounted to a challenge to the collection of participant premiums under the terms of the plan, which was settlor function); *Greene*, 2026 WL 785004, at *11 (finding that the defendant acted as settlor when it designed the wellness program at issue).

Counts III and IV challenge the design of the Plan's tobacco-cessation program: the surcharge framework, the contours of the alternative standard, and the asserted absence of retroactive reimbursement. Those are plan design or settlor choices. *See Greene*, 2026 WL 785004, at *12 ("To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs."). Plaintiff cannot alter this fact by characterizing these claims as challenges to "administration" or "implementation." As noted above, administering a plan in accordance with its design does not convert settlor decisions into fiduciary conduct. As explained in *Secretary of Labor v. Macy's, Inc.*, "the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the [plaintiff] alleges only that a discriminatory wellness program was implemented as created." 1:17-cv-541, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021).

Plaintiff does not allege that the tobacco cessation program is non-compliant with ERISA because it was being administered inconsistent with Plan terms. He solely challenges the Plan as

22

designed and, thus, does not challenge fiduciary conduct. His allegations fail to state a viable claim and must be dismissed.

### 2. Counts III and IV fail for the additional reason that the Plan is ERISA-compliant.

Even if Plaintiff could establish fiduciary status, Counts III and IV would still fail because the Plan's tobacco cessation program and disclosures comply with ERISA. Plaintiff's fiduciary-breach theory depends on the premise that ERISA requires retroactive reimbursement of tobacco surcharges upon completion of a cessation program and more expansive disclosures than the statute mandates. Section II above demonstrates that ERISA imposes no such requirements and that the Plan satisfies the governing statutory and regulatory standards. Where the challenged plan terms and disclosures are ERISA-compliant, there can be no breach of a fiduciary duty predicated on their adoption or application. *See Plesha*, 2026 WL 279321, at *8 (finding that a plaintiff's fiduciary breach claims required dismissal where the underlying tobacco cessation program was ERISA compliant).[6] Accordingly, Counts III and IV should be dismissed under Rule 12(b)(6)**.**

### D. Plaintiff Fails To State A Prohibited Transaction Claim Under ERISA § 1106.

Plaintiff's claims also require dismissal as he has not plausibly alleged that the collection of Plan premiums amounts to a prohibited transaction. Plaintiff alleges that Defendants engaged in prohibited transactions under ERISA § 1106 by imposing a tobacco-use surcharge and allegedly using those surcharge amounts to reduce Humana's own financial obligations to the Plan. (ECF No. 1 at ¶ 74–75.)

---

[6] Plaintiff's fiduciary breach claims are also deficient in alleging a claim based upon failure to monitor the Plan as such a claim is derivative of underlying violations of ERISA. *Dukes v. AmerisourceBergen Corp.*, 3:23-CV-313, 2024 WL 4282309, at *8 (W.D. Ky. Sept. 24, 2024).

This claim fails as a matter of law because Plaintiff's prohibited transaction theory depends entirely on the premise that it violates ERISA to fail to retroactively reimburse tobacco surcharges to participants who completed a tobacco-cessation program during the Plan year. As discussed in Section II.B, ERISA contains no such requirement. Where the underlying conduct is lawful, Plaintiff cannot recast it as a prohibited transaction under § 1106.

Dismissal is also required because the Complaint does not identify any cognizable "transaction" within the meaning of § 1106. Section 1106(a) prohibits certain transactions between the Plan and a "party in interest," subject to exemptions for reasonable core plan services. 29 U.S.C. § 1106; 29 U.S.C. § 1108(b). ERISA § 1106(b) prohibits a fiduciary from causing the Plan to enter into a contract for its own self-interest or from representing a party adverse to the Plan to enter into a transaction, again for its own self-interest. Indeed, exempted from § 1106 are transactions involving similar core plan functions, such as a fiduciary or party in interest receiving reasonable compensation for "legal, accounting, or other services necessary for the establishment or operation of the plan," 29 U.S.C. § 1108(b)(2)(A), and for "reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." 29 U.S.C. § 1108(c)(2).

Plaintiff points only to the routine collection and application of participant premiums pursuant to the Plan's terms, which again is a non-fiduciary, settlor function. (ECF No. 1 at ¶¶ 47–50, 73–75.) ERISA's prohibited transaction provisions do not reach the ordinary operation of a plan, and courts have cautioned that reading § 1106 to cover core plan funding functions "would lead to absurd results that are inconsistent with ERISA's statutory purpose." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022); *see also Greene*, 2026 WL 785004, at *12

("To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs.").

In short, Plaintiff's § 1106 claim is an improper attempt to repackage objections to the lawful design and cost-sharing structure as a prohibited transaction. Because the Complaint identifies no unlawful conduct, no qualifying transaction under § 1106, and no self-dealing beyond routine plan funding, Plaintiff fails to state a prohibited transaction claim. That claim should therefore be dismissed under Rule 12(b)(6).

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiff's Complaint. Because the flaws with Plaintiff's claims cannot be cured by repleading, dismissal should be with prejudice.

Date: June 18, 2026                    Respectfully submitted,

                                      */s/Michael J. Cederoth*

                                      Ada Dolph (*pro hac vice*)
                                      Thomas Horan *(pro hac vice* forthcoming)
                                      Michael J. Cederoth *(pro hac vice)*
                                      Kathleen C. Tranter (0089503)
                                      SEYFARTH SHAW LLP
                                      233 South Wacker Drive, Suite 8000
                                      Chicago, IL 60606
                                      Telephone: (312) 460-5000
                                      Facsimile: (312) 460-7000
                                      adolph@seyfarth.com
                                      thoran@seyfarth.com
                                      mcederoth@seyfarth.com
                                      ktranter@seyfarth.com

                                      Amanda L. Genovese (*pro hac vice*)
                                      SEYFARTH SHAW LLP
                                      620 Eighth Avenue, Suite
                                      New York, NY 10018-1405
                                      Telephone: (212) 218-5621
                                      Facsimile: (212) 218-5526
                                      agenovese@seyfarth.com

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 18, 2026, I filed the foregoing *Memorandum in Support Defendants'*

*Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will serve all

parties of record.

*/s/ Michael J. Cederoth*